**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CURTIS REDMOND,

        Petitioner,                       No. C 04-0160 PJH (PR)

    v.                                   **DENIAL OF PETITION FOR**
                                                  **WRIT OF HABEAS CORPUS**
J. SOLIS, Warden,

        Respondent.
                                   /

        This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. The matter is submitted.

**BACKGROUND**

        A Santa Clara County jury convicted petitioner of assault with a deadly weapon, grand theft from the person of another, and infliction of corporal injury upon a cohabitant. He was sentenced to sixteen years in prison. The California Court of Appeal affirmed petitioner's conviction, and the California Supreme Court denied his application for review.

        As grounds for habeas relief, petitioner asserts that: (1) His due process rights were violated when the trial court admitted evidence of his prior acts of domestic violence; (2) his counsel was ineffective in failing to object to "irrelevant and inflammatory" testimony; and (3) the trial court violated his rights to due process and trial by jury by giving CALJIC 17.41.1, instructing the jury members to report any juror who refused to deliberate or follow the law.

Petitioner does not dispute the following facts, which are taken from the opinion of the California Court of Appeal. Ex. A at 2-4.

### The Charged Offenses

Marie S. had had a relationship with defendant in the past, but as of February 22, 2000, she did not consider him her boyfriend. She testified that at around 4:00 a.m. that day, she was asleep at home when defendant banged on her window. After some hesitation, Marie let defendant enter on condition he simply lie down and sleep on the floor. However, defendant would not stop talking. Marie smelled alcohol and suspected he was high on cocaine, which, she explained, made him "speedy."[1] Marie asked defendant to leave. In response, he got angry, jumped on her, pulled out a screwdriver, and held it to her throat, threatening to jam it through her neck unless she gave him money. He also said something about a gun buried in her backyard. Marie retrieved $50 from her purse. Defendant demanded more, took the remaining $15, and then left.

Scared and afraid defendant might return, Marie fled to a friend's house to call the police. At 7:00 a.m., Officer Larry Holmes of the San Jose Police Department responded to the dispatch and went to speak to Marie. He observed red marks on her neck just below her chin. She told him defendant beat and robbed her and was now at his brother's residence. Later that morning at the brother's residence, Holmes arrested defendant and found $65 in his pocket in denominations matching those taken from Marie. [footnote omitted]

Marie testified about prior incidents of domestic violence against her. She explained that in January 1995, she and defendant were living together but argued all the time. On January 10, defendant went to a house where Marie had gone to get away from him and dragged her out, pulling her hair and hitting her in the face. He forced her back home and there punched her with his fist, blackening both of her eyes and fracturing her chin. He also kicked her as she lay curled on the floor in a fetal position, begging him to stop. Defendant also threatened to kill her and held a knife to her neck. [footnote omitted] Three days later, Marie was at a friend's house, and defendant again forcibly retrieved her.

Marie further testified that on September 1, 1996, she and defendant had been using cocaine and had an argument about money. At one point, she tried to calm things down because she was afraid defendant might get violent. She then left and went next door. Defendant became upset and called for her. She returned, and they continued to argue. Defendant became physical and kicked her as she lay on the floor.

### The Defense

Defendant testified that he went to Marie's house to get $65 she had agreed to loan him so he could pay his brother's drug debt. However, after giving him the money, she smelled alcohol [and] demanded it back. [footnote omitted] He refused, and they argued. Defendant denied assaulting her with a screwdriver.

Defendant testified that later, in a letter, Marie expressed regret for "'the

---

[1] The parties stipulated that a blood sample taken from defendant later that morning at 11:00 a.m. contained a blood-alcohol level of .16 percent and tested positive for the presence of cocaine.

2

things I did to you, I hurt you so much.'" She also apologized in person for lying about his actions and having him arrested. He suspected she was mad because he was seeing another woman named Pam.

Defendant's mother testified that after the incident, Marie indicated to her that either she scratched defendant or he scratched her. She did not know how she got the scratches but thought the defendant had a screwdriver. Marie admitted she had gone "'too far'" and did not know how to "'just clear'" herself. She said she was angry at defendant for drinking and jealous because he was seeing another woman.

Defendant admitted that he was convicted for armed robbery in 1984. On cross-examination, defendant acknowledged that the offense was armed robbery and he was originally charged with murder because his accomplice killed someone during the incident. Defendant also admitted prior convictions for battery against Marie in 1995 and inflicting corporal punishment on her in 1996. Concerning the latter incident, he explained that they had both been drinking and taking drugs all day. They got into an argument about money, and Marie attacked him. He responded by shoving her with his foot while she was on the floor.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2001), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 123 S. Ct. 1029, 1041 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but

"unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 123 S. Ct. at 1041.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do.  *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 123 S. Ct. at 1041; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, in this case that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**DISCUSSION**

1.   <u>Due Process</u>

Petitioner claims that the admission of evidence of his prior acts of domestic violence, under California Evidence Code section 1109, violated his right to due process. Section 1109 allows the trial court to admit prior acts of domestic violence as evidence of a propensity to commit such acts. Cal. Evid. Code §§ 1101,1109.  A state court's admission of evidence is not subject to federal habeas review unless the evidentiary ruling violates

4

federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

No federal court has specifically ruled on the constitutionality of section 1109. However, the Ninth Circuit has held that Federal Rule of Evidence 414, which also allows propensity evidence and is analogous to section 1109, does not violate the right to due process. *United States v. LeMay*, 260 F.3d 1018, 1027 (2001). Rule 414 states:

> "In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant."

*Id.* at 1024. The court held in *LeMay* that Rule 414 is not unconstitutional because it is limited in its function by Rule 403. *Id.* at 1026-27. Rule 403 directs judges to exclude any evidence submitted under Rule 414 that is more prejudicial than probative. *Id.* at 1027. The court reasoned that this balancing process eliminates the due process concerns of Rule 414, stating: "[a]s long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded." *Id.* at 1026.

The reasoning of *Le May* applies equally to this case because the California rules are analogous to the federal rules. Evidence that is admissible under section 1109 is limited by section 352. Cal. Evid. Code § 1109(a)(1). Section 352 parallels Federal Rule of Evidence 403 because it permits a trial judge to exclude evidence when its probative value is substantially outweighed by its prejudicial effect. Cal. Evid. Code § 352. Just as Rule 403 in *LeMay*, section 352 ensures that evidence admitted under section 1109 will not infringe on the right to a fair trial guaranteed under the Due Process Clause.

In addition, the admission of propensity evidence in petitioner's case did not amount to an unconstitutional application of sections 1109 and 352. The state appellate court held that the trial court did not abuse its discretion in refusing to exclude evidence of prior acts under section 352. Ex. A at 6. The court found that several factors weighed in favor of

admitting the evidence. First, the court reasoned that the even the oldest event was not too remote in time to be relevant, especially since it was followed by another act the next year and therefore demonstrated a pattern. *Id.* Also, the prior events shared characteristics with the current crime: during the 1995 incident petitioner held a weapon to Marie's neck and during the 1996 incident petitioner was high on drugs. *Id.* The court acknowledged that prejudice from the evidence was possible, given that the past acts were more violent and resulted in more severe injuries than the current offense, but found that the evidence's probative value outweighed this risk. *Id.* In so finding, the appellate court held that the trial court reasonably applied the balancing test required by section 352. *Id.* Thus, section 352 functioned in this case as a constitutional filter of evidence admitted under section 1109, ensuring that petitioner's due process rights were not violated. *See LeMay*, 260 F.3d at 1030.

Finally, the Supreme Court has never held that the admission of evidence of prior crimes violates the right to due process. *See Estelle v. McGuire*, 502 U.S. 62, 75 n. 5 (1991) (declining to rule on the constitutionality of propensity evidence); *Garceau v. Woodford*, 275 F.3d 769, 774 (9th Cir. 2002). As described above, habeas relief may not be granted unless the state court decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254. Without Supreme Court precedent stating that admitting evidence of prior acts violates due process, this requirement is not satisfied.

For these reasons, petitioner's claim that he is entitled to habeas relief because admission of evidence under Rule 1109 violated his due process rights is without merit.

2. <u>Ineffective assistance of counsel</u>

Petitioner claims that his counsel was ineffective for failing to object to "irrelevant and inflammatory" testimony. A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668,

6

686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

Petitioner contends that his counsel should have objected to Marie's testimony that during the incident petitioner claimed to have hidden a gun in her yard. Petitioner argues that the following testimony should have been challenged at trial:

> Q. Why didn't you call the police from your home ma'am?
> A. I wanted to get out of there.
> Q. Were you afraid that the defendant might return?
> A. That was a very strong possibility, yes.
> Q. Why did you -- withdraw the question. Prior to the defendant holding a screwdriver to your neck, did he indicate to you that he had hidden something there in your yard?
> A. Yeah, he told me he had buried a gun in my backyard.
> Q. How did that make you feel?
> A. Scared.

Ex. D2 at 84-85. He contends that this testimony served only to portray him as a violent person.

In order to prevail on an ineffective assistance claim, petitioner must establish two things: deficient performance and resulting prejudice. *Strickland*, 466 U.S. at 687-694. First, an attorney's performance qualifies as deficient if it falls below an "objective standard of reasonableness." *Id.* at 687-688. Second, prejudice has resulted if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Petitioner's claim fails on both prongs of the ineffective assistance test. Regarding the first prong, petitioner's counsel could have reasonably decided not to object to the testimony as part of a trial strategy. As pointed out by the appellate court, this testimony constituted the sole reference to a gun. Ex. A at p. 8. Since no gun was ever introduced into evidence, counsel may have reasonably decided that objecting to the testimony would have only drawn unnecessary attention to it. *Id.* A difference of opinion as to trial tactics does not constitute denial of effective assistance, *United States v. Mayo*, 646 F.2d 369, 375

(9th Cir. 1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available, *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). Based on this standard, the decision not to object to the testimony cannot be deemed objectively unreasonable.

Regarding the second prong, petitioner fails to demonstrate that the testimony resulted in prejudice. There were no other references to the gun during the trial and the prosecutor did not mention it during closing statements, so its effect on the outcome of the trial was most likely minimal. Ex. A at 8-9. Furthermore, contrary to petitioner's contention, the testimony did not unfairly add to the evidence regarding petitioner's violent tendencies since Marie also testified about his violent actions during the current offense and during prior incidents. Given that this testimony constitutes the sole reference to a gun and that there was other evidence of petitioner's violence, there is not sufficient probability that, but for counsel's failure to object to the gun testimony, the outcome would have been different.

The California appellate court's rejection of petitioner's ineffective assistance claim was not contrary to, or an unreasonable application of, clearly established federal law. The state court identified the two-prong standard and reasonably concluded that counsel was not ineffective. Accordingly, petitioner is not entitled to habeas relief on this claim.

   3.   <u>Jury instruction CALJIC 17.41.1</u>

Petitioner claims that using CALJIC 17.41.1 violated his right to due process and trial by a jury by inhibiting jury deliberation and invading jury privacy. CALJIC 17.41.1 provides:

> The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on [penalty or punishment, or] any [other] improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation.

The Ninth Circuit has held that there is no "clearly established United States Supreme Court precedent" which establishes that an anti-nullification instruction such as CALJIC 17.41.1 violates a constitutional right. *Brewer v. Hall*, 378 F.3d 952, 955-56 (9th Cir. 2004). The court therefore held that a California appellate court's rejection of a

8

challenge to 17.41.1 could not be contrary to, or an unreasonable application of, clearly established Supreme Court authority. *Id.* at 956.[2] In light of *Brewer*, that the trial court gave CALJIC 17.41.1 cannot be the basis for federal habeas relief.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

Dated: July 24, 2006.

_____
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\CR.04\REMOND160.RUL

---

[2] Juror nullification is not a right under the Constitution, laws or treaties of the United States. *Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999) (noting no right to jury nullification in the context of federal habeas review); *cf. United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1992) (federal defendants are not entitled to jury nullification instructions). Any instruction that arguably impeded this non-existent right did not violate the Constitution, laws or treaties of the United States and cannot justify habeas relief.